Filed 11/19/25  P. v. Luciano CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D083868 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE407648) |
| RALPH NICHOLAS LUCIANO, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Daniel G. Lamborn and Roderick W. Shelton, Judges.  Affirmed.

Stephanie M. Adraktas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Namita Patel, Deputy Attorneys General, for Plaintiff and Respondent.

# I
# INTRODUCTION

Ralph Nicholas Luciano fired a rifle several times during a brawl that pitted himself and his two adult sons against a handful of men who lived and worked near the Luciano family on a rural farm.  A jury found Luciano guilty of one count of assault with a firearm against Elwood M. (Pen. Code, § 245, subd. (a)(2); count 1),[1] and one count of negligent discharge of a firearm (§ 246.3, subd. (a); count 2), and found Luciano personally used a firearm in the commission of the assault (§ 12022.5, subd. (a)).  The trial court found true an aggravating circumstance allegation that Luciano induced others to participate in the commission of the crimes (Cal. Rules of Court, rule 4.421(a)(4)), and placed him on formal probation for three years with a 365-day term of commitment in county jail.

On appeal from the judgment of conviction, Luciano argues the trial court erred by failing to modify, sua sponte, several jury instructions to specify that a defendant can act in lawful defense of others.  He also contends the court erred by failing to provide, sua sponte, a jury instruction on unanimity.  We reject these arguments and affirm the judgment.

# II
# BACKGROUND

Luciano, his wife, and their 13 children lived in a recreational vehicle (RV) on a farm in the rural community of Jamul.  The farm had a communal area with a kitchen, dining area, bar, stage, and greenhouses.  Several people lived and/or worked on the property, including Kyle H. and D'On H.  Elwood M. also lived on the farm, where he ran a wellness center and produced a

---

[1]     Further undesignated statutory references are to the Penal Code.

2

podcast. About a week before the assault at issue, Elwood recorded the first half of a podcast interview with Luciano sitting as his interviewee.

One afternoon, as Elwood and D'On were setting up recording equipment in the farm's communal area to complete the podcast interview, Luciano told Elwood he would not continue the interview due to personality conflicts he had with some of the workers on the farm. Specifically, Luciano thought Kyle had been rude to one of his children and the Luciano family believed Kyle did not respect the family's fervent religious beliefs. Kyle and two of Luciano's adult sons, Dylan and Skylar, joined the conversation and it quickly devolved into a heated and chaotic verbal altercation.

Elwood, D'On, and Luciano's wife tried to deescalate the situation and Elwood told Kyle to leave the communal area. Kyle complied and walked away towards the greenhouses, but Luciano, Skylar, and Dylan followed him and the argument escalated into a physical brawl. Witnesses provided differing accounts of the fight. The Lucianos claimed Kyle shoved Luciano, pulled Dylan's hair, and punched Dylan during the scuffle. Kyle, on the other hand, maintained that one of the Luciano sons struck him with a baseball bat and Skylar choked him. At one point during the fight, Luciano picked up a child's bicycle and threw it at Elwood and his companions.

Elwood continued trying to calm everyone down and cooler heads prevailed as the combatants stopped fighting and separated from one another. However, after the fighting subsided, Luciano or one of his sons told one of the younger Luciano children to get a gun.[2] Elwood, Kyle, and D'On did not have any weapons on them, apart from a small gardening blade in

---

[2] Elwood and D'On testified that Luciano asked for the gun, while Skylar claimed that one of his younger brothers asked for the gun.

Kyle's possession, and none of them displayed a weapon to any member of the Luciano family at any point during the confrontation.

One of the younger Luciano children went to the family's RV, retrieved a .22 mm caliber rifle, and handed the rifle to Dylan. Dylan fired multiple shots into the ground and away from people. Meanwhile, Kyle, D'On, and a third farmhand fled behind a fence and away from the property.[3] Luciano grabbed the rifle from Dylan, fired several shots into the ground and at an embankment near the fleeing farmhands, and reloaded the rifle with ammunition. Luciano then demanded to speak with Joseph O., a neighbor who lived in a compound in the hills above the farm. Elwood directed Luciano's attention to Joseph, who was standing with his sons on a lookout above the men. Luciano raised his rifle and discharged a shot in Joseph's general direction, but the shot did not strike anyone.

Elwood—who was still in the company of Luciano, Skylar, and Dylan—continued trying to deescalate and dissuade Luciano from firing the rifle. Luciano responded by pointing the weapon at Elwood's face and saying, "You're either with me or you're against me." Elwood turned away and asked Luciano not to point the rifle at him. Luciano continued pointing the rifle at Elwood for another 10 seconds before lowering it.

Law enforcement arrived shortly afterwards, at which point Luciano, Skylar, and Dylan fled into the nearby hills. Law enforcement searched the Luciano family's RV and recovered a .22 mm rifle and ammunition for the rifle.

---

[3] At trial, Skylar testified that Kyle announced he "was going to get a gun," and Skylar claimed the farmhands were "running to go get something" when they fled from the scene of the fight.

DISCUSSION

Luciano presents several claims of instructional error. He asserts the trial court erred by failing to modify, sua sponte, multiple pattern jury instructions relevant to his claim of self-defense. He also contends the court erred by failing to give, sua sponte, a jury instruction on unanimity. For reasons we shall explain, we reject these claims of error.

A. *The Trial Court Did Not Err By Failing to Modify the Jury Instructions to Clarify That a Defendant May Act in Lawful Defense of Others*

   1. *Legal Principles*

A claim of instructional error "requires an evaluation of ' " 'the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction.' " [Citations.]' [Citation.] ' "A defendant challenging an instruction as being subject to erroneous interpretation by the jury must demonstrate a reasonable likelihood that the jury understood the instruction in the way asserted by the defendant." ' " (*People v. Thomas* (2023) 14 Cal.5th 327, 382; *People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 791 (*Holmes*) ["An instructional error claim is reviewed in the context of the record and instructions as a whole to determine whether there is ' " 'a reasonable likelihood that the jury was misled to defendant's prejudice.' " ' "].) " 'Jurors are presumed able to understand and correlate instructions and are further presumed to have followed the court's instructions.' " (*Thomas*, at p. 382; *Holmes*, at p. 791 ["We assume that jurors are intelligent and well able to understand and integrate all the instructions given."].) "If reasonably possible, we will interpret the instructions to support the judgment rather than to defeat it." (*People v. Franco* (2009) 180 Cal.App.4th 713, 720; *People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088 [" 'Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation.' "].)

We review claims of instructional error de novo.  (*People v. Frazier* (2024) 16 Cal.5th 814, 839; *People v. Lewis* (2023) 14 Cal.5th 876, 900.)

### 2. *The Trial Court Did Not Err by Failing to Instruct the Jury on the Lawful Defense of Others in the Assault Instruction*

Luciano's primary defense at trial was that he never fired his rifle during the confrontation between his family and the farmworkers.  He posited that Dylan was the only member of the Luciano family who fired shots and those shots were fired into the ground.  Alternatively, Luciano claimed he acted in self-defense or the defense of his family, if the jury were to reject his primary defense and find that he fired the rifle.  Consistent with this defense, evidence was presented tending to prove Luciano fired his rifle in self-defense or the defense of his family, if he fired the rifle at all.

After the close of evidence, the trial court instructed the jury on the crime of assault with a firearm using a pattern jury instruction, CALCRIM No. 875.  In part, the instruction stated that the prosecution was required to prove, among other elements of the crime, that Luciano "did not act in self-defense."  However, the court did not modify the instruction to state that the prosecution was also required to prove Luciano did not act *in defense of another*.  According to Luciano, the court's failure to modify the pattern instruction, sua sponte, allowed the prosecution to obtain a conviction

6

without satisfying its burden of proof, thereby violating his constitutional rights to due process and a fair trial.[4]

Reviewing the entire record, including the instructions as a whole, we reject Luciano's claim of error and conclude it is not reasonably likely the jury was misled by the pattern instruction on assault with a firearm. In addition to providing the instruction on assault with a firearm, the court gave a standalone pattern jury instruction on the right to self-defense, CALCRIM No. 3470. That comprehensive instruction defined self-defense for purposes of both charged crimes—including assault with a firearm—and expressly stated that the jury must find Luciano not guilty of the crimes unless the prosecution proved, beyond a reasonable doubt, that he did not act in self-

---

[4] The People argue that Luciano forfeited his claims of instructional error related to his right to self-defense because he did not object to the relevant instructions or ask the trial court to modify them. Normally, "[a] trial court has no sua sponte duty to revise or improve upon an accurate statement of law without a request from counsel [citation], and failure to request clarification of an otherwise correct instruction forfeits the claim of error for purposes of appeal." (*People v. Lee* (2011) 51 Cal.4th 620, 638.) However, an appellate court may "review any instruction given, refused or modified, even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby." (§ 1259.)

Here, the prosecution was required to prove, beyond a reasonable doubt, that Luciano did not act in lawful self-defense or defense of another, yet Luciano claims the jury instructions were sufficiently flawed that they reduced the prosecution's burden of proof on this issue. If his arguments are correct, the alleged errors affected his substantial rights. (See *People v. Hillhouse* (2002) 27 Cal.4th 469, 503 ["Instructions regarding the elements of the crime affect the substantial rights of the defendant, thus requiring no objection for appellate review."].) Therefore, we must assess his arguments on the merits to determine whether they affected his substantial rights.

defense *or defense of another*.[5]  Because the assault with a firearm instruction stated that the prosecution bore the burden of proving Luciano did not act in self-defense, and the standalone self-defense instruction properly defined self-defense to encompass both Luciano's defense of himself and his defense of others, we presume the jury correlated the two interrelated instructions and applied the definitions contained in the standalone self-defense instruction when it evaluated whether the prosecution met its burden of proof as to the assault with a firearm charge.

The parties' closing arguments further dispelled any notion the jury may have been confused or misled by the instruction on assault with a

---

[5]     CALCRIM No. 3470 (titled "Right to Self-Defense *or Defense of Another*") stated, in part:  "Self-defense, as explained in this instruction, is a defense to assault with a firearm as charged in Count One and Discharging a Firearm in a Grossly Negligent Manner as charged in Count Two.  The defendant is not guilty of those crimes if he used force against the other person in lawful self-defense or *defense of another*.  The defendant acted in lawful self-defense *or defense of another* if: [¶] 1. The defendant reasonably believed that he *or someone else* was in imminent danger of suffering bodily injury or was in imminent danger of being touched unlawfully; [¶] 2. The defendant reasonably believed that the immediate use of force was necessary to defend against that danger; [¶] AND [¶] 3. The defendant used no more force than was reasonably necessary to defend against that danger. [¶] Belief in future harm is not sufficient, no matter how great or how likely the harm is believed to be.  The defendant must have believed there was imminent danger of bodily injury to himself *or someone else* or an imminent danger that he *or someone else* would be touched unlawfully. … If the defendant used more force than was reasonable, the defendant did not act in lawful self-defense *or defense of another*. [¶] … [¶] If you find that the defendant received a threat from someone else that he reasonably associated with the victim, you may consider that threat in deciding whether the defendant was justified in acting in self-defense *or defense of another*. [¶]… [¶] The People have the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense *or defense of another*.  If the People have not met this burden, you must find the defendant not guilty of the crimes charged in counts one and two."  (Italics altered.)

firearm.  (See *People v. Huggins* (2006) 38 Cal.4th 175, 193 ["we consider the arguments of counsel in deciding whether the jury misunderstood the instructions"]; *People v. Stone* (2008) 160 Cal.App.4th 323, 331 [" 'The reviewing court also must consider the arguments of counsel in assessing the probable impact of the instruction on the jury.' "].)  In his closing argument, the prosecutor asserted Luciano did not act in lawful self-defense because the physical brawl had already subsided by the time he obtained and fired his rifle, meaning "nobody was attacking Ralph Luciano *or his family* at [that] time."  (Italics added.)  Therefore, the prosecutor argued, it was not "a situation where someone was defending people while there was imminent harm."  Defense counsel illustrated the point even more explicitly during her closing argument.  She advised the jury, "Luciano acted in self-defense if he reasonably believed that him *or his children* were in imminent danger of suffering bodily harm, if he believed that the immediate force was necessary, and if he used no more force than was reasonable."  (Italics added.)

Based on the standalone pattern jury instruction on self-defense, as well as the parties' framing of the concept of self-defense during their closing arguments, we conclude Luciano has not established a reasonable likelihood that the jury misunderstood the prosecution's burden of proof or the necessary elements for the charge of assault with a firearm.

3. *The Trial Court Did Not Err When it Instructed the Jury About Luciano's Right to Stand His Ground*

The standalone instruction on self-defense contained a paragraph relating to a defendant's right to stand his or her ground, which the court provided when it read the full instruction to the jury.  The portion of the instruction relating to a defendant's right to stand his or her ground stated, "A defendant is not required to retreat.  He or she is entitled to stand his or her ground and defend *himself or herself* and, if reasonably necessary, to

9

pursue an assailant until the danger of death or bodily injury has passed. This is so even if safety could have been achieved by retreating." (Italics added.)

Echoing the instructional error argument discussed above, Luciano contends the court erred by failing to modify the self-defense instruction, sua sponte, to state that a defendant is entitled to stand his or her ground and defend *another person*. Luciano asserts the instruction likely misled the jury into believing a defendant can stand his or her ground only if the defendant is defending himself or herself—but not to defend another person.

Although it would have been more precise if the pattern self-defense instruction had stated that a defendant may stand his or her ground to defend another person, and not merely the defendant himself or herself, we conclude it is not reasonably likely the jury would have interpreted the instruction in the manner Luciano suggests. The relevant paragraph is a small part of an overarching instruction, CALCRIM No. 3470, that clearly—and repeatedly—advised the jury that a defendant possesses a right to defend both himself or herself and another person, if it was otherwise warranted under the circumstances. Given the placement of the stand-your-ground paragraph within the context of a broader self-defense instruction that unmistakably advised the jury that a defendant has a lawful right to act in defense of others, it is highly unlikely the jury would have interpreted the snippet of the instruction at issue to conclude that Luciano could stand his ground to protect only himself and not his family members.

Moreover, to the extent there was ambiguity on this issue, defense counsel's closing argument clarified the proper scope of a defendant's right to stand his or her ground. While arguing that Luciano acted in self-defense (if in fact he fired a rifle at all), defense counsel stated, "Now, the biggest

10

question, I'm sure many of you have is, why doesn't [Luciano] just leave? Well, we actually have stand your ground laws in California. Nothing requires him to go. Even if retreating would have been the better option, he doesn't actually have to retreat. He can stay there and stand his ground and fight *and defend his children*." (Italics added.)

These comments, in combination with the embedding of the stand-your-ground paragraph within a comprehensive self-defense instruction that repeatedly referred to a defendant's right to defend other persons, precludes Luciano from establishing that there was a reasonable likelihood the stand-your-ground paragraph confused or misled the jury.

    4. *The Trial Court Did Err When It Instructed the Jury About Self-Defense for Persons in Mutual Combat and Initial Aggressors*

Immediately after instructing the jury on self-defense with CALCRIM No. 3470, the court instructed the jury on the availability of a self-defense claim for a person who was engaged in mutual combat or the initial aggressor in a fight. The court instructed the jury on these principles using another pattern jury instruction, CALCRIM No. 3471.

The instruction stated, "A person who engages in mutual combat or who starts a fight has a right to self-defense only if: [¶] 1. He actually and in good faith tried to stop fighting; [¶] 2. He indicated, by word or by conduct, to his opponent, in a way that a reasonable person would understand, that he wanted to stop fighting and that he had stopped fighting; [¶] AND [¶] 3. He gave his opponent a chance to stop fighting. [¶] If the defendant meets these requirements, he then had a right to self-defense if the opponent continued to fight. [¶] However, if the defendant used only non-deadly force, and the opponent responded with such sudden and deadly force that the defendant could not withdraw from the fight, then the defendant had the right to defend himself with deadly force and was not required to try to stop fighting, or

11

communicate the desire to stop to the opponent, or give the opponent a chance to stop fighting."

Like the instructional error arguments we have already rejected, Luciano asserts this instruction misled the jury into believing a defendant who engages in mutual combat or starts a fight can, at most, defend himself—but not others. We reject this argument for the reasons discussed above. As noted, the court instructed the jury on mutual combat and initial aggressor principles immediately after it instructed the jury with CALCRIM No. 3470, which repeatedly indicated that a defendant's right to lawful self-defense encompasses both the right to defend oneself and the right to defend others. Further, as discussed, both parties framed the right to self-defense for the jury as a defendant's right to defend both oneself and others, even though counsel quite understandably disagreed about whether Luciano acted in lawful self-defense of himself and his family under the circumstances of this case. Reviewing the jury instructions as a whole, as well as counsel's closing arguments, we conclude Luciano has not demonstrated a reasonable likelihood the jury was confused or misled by the pattern jury instruction on persons engaged in mutual combat and initial aggressors.

B. *The Trial Court Did Not Err by Declining to Give a Jury Instruction on Unanimity*

Luciano also contends the court erred by failing to provide, sua sponte, a jury instruction on unanimity, such as CALCRIM No. 3500. We disagree.

"In a criminal case, a jury verdict must be unanimous." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132 (*Russo*).) "Additionally, the jury must agree unanimously the defendant is guilty of a *specific* crime. [Citation.] Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act. [Citations.]

12

[¶] This requirement of unanimity as to the criminal act 'is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed.' [Citation.] … 'The [unanimity] instruction is designed in part to prevent the jury from amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done *something* sufficient to convict on one count.' " (*Ibid.*; see *People v. Grimes* (2016) 1 Cal.5th 698, 727 ["A unanimity instruction is required if there is evidence that more than one crime occurred, each of which could provide the basis for conviction under a single count."].)

Luciano did not request a unanimity instruction at trial. Nevertheless, he argues on appeal that the prosecution elicited evidence of two discrete crimes of assault with a firearm—one assault against Elwood and a second assault against Joseph. According to Luciano, the court's failure to provide, sua sponte, a jury instruction on unanimity impermissibly enabled the jury to find him guilty of the assault charge even if it did not unanimously agree on *which* assault he perpetrated. We reject this argument.[6]

---

6    The People claim Luciano forfeited his instructional error argument by failing to request a unanimity instruction in the proceedings below. However, " '[e]ven absent a request, the court should give [a unanimity] instruction "where the circumstances of the case so dictate." ' " (*People v. Covarrubias* (2016) 1 Cal.5th 838, 877; see *People v. Tate* (2010) 49 Cal.4th 635, 697, fn. 34 ["The People claim forfeiture on grounds defendant did not request a unanimity instruction below. We find no forfeiture, because we understand defendant's argument to be that the court should have given such an instruction sua sponte."].) Thus, we address the merits of Luciano's argument to determine whether the circumstances warranted a unanimity instruction, notwithstanding his failure to request such an instruction.

As noted, when the evidence suggests more than one discrete crime, the prosecution may "elect among the crimes" in lieu of the court providing an instruction on unanimity. (*Russo, supra*, 25 Cal.4th at p. 1132.) If the prosecution elects among the crimes, it must communicate its election to the jury and not merely to the court and/or opposing counsel. (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1534–1536 (*Melhado*).) The prosecution may convey its election to the jury by tying a particular charge to a specific criminal act during its opening or closing arguments. (See *People v. Brugman* (2021) 62 Cal.App.5th 608, 627–629; *People v. Hawkins* (2002) 98 Cal.App.4th 1428, 1454–1455; *People v. Diaz* (1987) 195 Cal.App.3d 1375, 1382–1384.)

In the present case, the prosecution clearly communicated its election to the jury during closing arguments.[7] Near the beginning of his argument, the prosecutor played a video recording that depicted a portion of the brawl. Then, the prosecutor—referring to Elwood—stated, "I'm giving you this video because *it shows that our victim the entire time was deescalating the situation* to the best that he could. Telling everyone to stop …. [¶] [T]his is a rhetorical question, but is there anything more that someone can do when they're saying stop, stop it, stop it, stop it, stop it, to indicate that they are trying to have everyone discontinuing fighting? [¶] I know that's a rhetorical question, and I'm saying that because [Elwood] is the one who ultimately gets the rifle pointed at him as he's got his hands up or kind of turning sideways in fear that he's about to be shot. *That's the person who is the victim in this case*, when [Luciano has] got his rifle loaded, and he's just firing it all over the

---

7  The prosecution made its election long before it communicated the election to the jury. The charging document identified Elwood as the victim of count 1, the assault with a firearm charge.

14

place and points it at him, right? [¶] So if there's ever a question about self-defense, [Elwood] is last on the list, we'll say, right?" (Italics added.)

Later, still during his closing argument, the prosecutor discussed the elements of the crime of assault with a firearm. He stated that the crime occurs when "[t]he defendant did an act with a firearm that, by its nature, would directly and probably result in the application of force to a person." Shortly afterwards, while arguing that the prosecution satisfied its burden of proof as to each element of the crime, the prosecutor stated, "When [Luciano] acted, he had the present ability to apply a force with a firearm. Well, we know that's true. He was firing all over the place. The gun was loaded. He had a box of ammunition at his feet or in the field. So yes. *He did have the present ability to apply force* with the firearm to a person, to Joseph [O.], obviously, but *to Elwood [M.] more particularly, our victim in this case*. When the firearm was pointed at him, did [Luciano] have the present ability to apply force with a rifle? Of course, he did." (Italics added.)

The prosecutor's repeated description of Elwood—not Joseph—as the victim of the assault with a firearm charge effectively conveyed to the jury the prosecution's election as to the crime charged in count 1. Thus, the court was not required to provide an instruction on unanimity with respect to count 1. (See *Melhado, supra*, 60 Cal.App.4th at p. 1534 ["*either* the prosecution must elect the specific act relied upon to prove the charge to the jury, *or* the court must instruct the jury that it must unanimously agree that the defendant committed the same specific criminal act"], italics added.)

In a related argument, Luciano contends a unanimity instruction was required for the charge of negligent discharge of a firearm. He claims the witnesses described multiple acts that potentially could have given rise to the crime of negligent discharge of a firearm. Specifically, the witnesses testified

15

Luciano fired multiple shots into the ground, into the embankment near the fleeing farmworkers, and towards Joseph and his sons. According to Luciano, the absence of a unanimity instruction erroneously allowed the jury to find Luciano guilty of the charge of negligent discharge of a firearm without unanimously agreeing on which specific shot gave rise to the charge. We are not persuaded.

"Even when the prosecution proves more unlawful acts than were charged, no unanimity instruction is required where the acts proved constitute a continuous course of conduct. [Citation.] ' "This exception arises in two contexts. The first is when the acts are so closely connected that they form part of one and the same transaction, and thus one offense. [Citation.] The second is when ... the statute contemplates a continuous course of conduct of a series of acts over a period of time." ' " (*People v. Napoles* (2002) 104 Cal.App.4th 108, 115.) "There also is no need for a unanimity instruction if the defendant offers the same defense or defenses to the various acts constituting the charged crime." (*People v. Jennings* (2010) 50 Cal.4th 616, 679.) "The justification for the exception is that there is no need for an instruction when there is a single course of conduct because members of the jury cannot distinguish between the separate acts. Further, the instruction is unnecessary when the defendant proffers the same defense to multiple acts because a guilty verdict indicates that the jury rejected the defendant's defense in toto." (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 572.)

On the record before us, we have no trouble concluding Luciano's shots constituted a continuous course of conduct. Luciano fired the shots in quick succession during the same confrontation. (See *People v. Williams* (2013) 56 Cal.4th 630, 682 [continuous-course-of-conduct exception applies when "the 'criminal acts ... took place within a very small window of time' "].) Further,

he did not proffer any defense that he fired certain shots, but not all of the shots. Instead, he presented the same defenses to all the criminal acts, claiming he did not fire any shots at all or, alternatively, he fired in self-defense. Because the jury found him guilty of the charge of negligent discharge of a firearm, it is apparent the jury rejected these defenses altogether. Because the shots formed a continuous course of conduct, and the jury rejected Luciano's defenses in toto, no unanimity instruction was required. (See *People v. Bui* (2011) 192 Cal.App.4th 1002, 1011 ["all of the gunshots were part of one continuous course of conduct," obviating the need for unanimity instruction in attempted murder case]; *People v. Flores* (2007) 157 Cal.App.4th 216, 222–223 [defendant who fired successive shots with handgun not entitled to unanimity instruction for charge of assault with a semiautomatic firearm under continuous-course-of-conduct exception].)

## III

## DISPOSITION

The judgment is affirmed.


McCONNELL, P. J.

WE CONCUR:


DATO, J.


KELETY, J.

17